UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SARAH MCCRACKEN,<br><br>        Plaintiff,<br><br>v.<br><br>KSF ACQUISITION<br>CORPORATION,<br><br>        Defendant. | Case No. 5:22-cv-01666-SB-SHK<br><br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANT'S MOTION TO<br>DISMISS PLAINTIFF'S SECOND<br>AMENDED COMPLAINT [DKT.<br>NO. 34] |

Plaintiff Sarah McCracken purchased four SlimFast food products sold by Defendant KSF Acquisition Corporation, each of which prominently stated "CLINICALLY PROVEN [ – ] LOSE WEIGHT & KEEP IT OFF" on the front of its packaging.  It is undisputed that none of the products she purchased has been clinically tested or proven to cause consumers to lose weight or maintain weight loss, although Defendant contends that additional disclaimers on the backs of the packages make clear that the statements refer to Defendant's low-calorie "SlimFast Plan" rather than to the products themselves.  Plaintiff alleges on behalf of herself and a putative class of consumers that Defendant's advertising is false and misleading.  Defendant moves to dismiss Plaintiff's Second Amended Complaint (SAC) for failure to state a claim.  The Court vacated the motion hearing, Dkt. No. 40, and now finds this matter suitable for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.  The Court concludes that Plaintiff's request for equitable restitution and disgorgement must be dismissed because Plaintiff has not shown the unavailability of adequate legal remedies.  Defendant has not otherwise established that it is entitled to dismissal of Plaintiff's remaining claims.

1

I.

From 2017 to 2021, Plaintiff purchased four SlimFast products:
(1) SlimFast Original Meal Replacement Shake Mix (both vanilla and chocolate);
(2) SlimFast Original Shakes (both vanilla and chocolate); (3) SlimFast Keto Fat
Bomb Meal Bars (whipped peanut butter chocolate); and (4) SlimFast Fat Bomb
Keto Snack Cup (both iced lemon drop and peanut butter).  Dkt. No. 32 ¶ 8 (SAC).
During the years she used the products, Plaintiff purchased them at least every two
weeks and replaced one to two meals per day with the SlimFast shakes or bars.  *Id*.
¶ 10.  She alleges that she purchased the products because she believed, based on
the statements on the packaging, that the products themselves had been clinically
tested and proven to cause and maintain weight loss.  *Id*. ¶¶ 9–10.[1]  Plaintiff did
not, however, lose weight or keep it off.  *Id*. ¶ 11.  She alleges that she paid
substantially more for Defendant's products than she would have if she had known
that they were not clinically proven to cause weight loss.  *Id*. ¶ 12.

The SAC contains images of the front of the packaging for each of the four
products Plaintiff purchased.  *Id*. ¶¶ 25–28.  All four conspicuously feature a
similar box with bold letters stating "CLINICALLY PROVEN [ – ] LOSE
WEIGHT & KEEP IT OFF," as in the example below:



---

[1] Plaintiff also alleges that the SlimFast website does not clearly indicate that
its claim about being "clinically proven" refers only to adherence to a low-calorie
meal replacement diet and not to anything intrinsic to any of the SlimFast products.
Dkt. No. 32 ¶ 35.

*Id*.  The back of the product packaging states, "CLINICALLY PROVEN TO LOSE WEIGHT FAST" and contains information in smaller print about the "SlimFast Plan."   The SAC provides an example:



*Id*. ¶ 39.  The fine print references both the SlimFast Plan and the particular product being sold, stating:

> For over 40 years, millions of Americans have lost weight and kept it off using SlimFast Original Meal Shakes, as part of the clinically proven SlimFast Plan.  50 Clinical studies prove the SlimFast Plan helps you effectively lose weight, and you can see results in just one week!

*Id*. ¶ 40.

Plaintiff relies on two recent findings by private regulators, both of which are attached to the SAC and incorporated into the pleadings.  In August 2021, the National Advertising Division (NAD) of the independent non-profit organization BBB National Programs, an industry-established entity purportedly designed to provide self-regulation and build consumer trust in advertising, issued a decision addressing the advertising claims at issue in this action.  The NAD found, among other things, that "a reasonable consumer could take away the message that [Defendant's] clinically proven claim refers to any product upon which it appears" and that "'Clinically Proven to Lose Weight & Keep It Off' conveys a clinically proven weight-loss and maintenance message about each individual SlimFast

product." *Id*. ¶ 5; Dkt. No. 32-1 at 3 (NAD decision).  The NAD noted that it was undisputed that "SlimFast has not clinically tested the weight-loss efficacy of any of its current products" bearing the "clinically proven" claim, and that although the products may help consumers lose weight when used as part of the SlimFast Plan, Defendant's "clinically proven" claim "is not limited to its low-calorie feature of the plan, but expressly and by implication conveys the message that the current products themselves have been clinically proven to allow consumers to lose weight and keep it off."  Dkt. No. 32-1 at 6, 8.  The NAD therefore recommended that Defendant change its advertising and discontinue its claim.  *Id*. at 10, 12.

Defendant appealed this decision to the National Advertising Review Board (NARB), a private appellate review body, which agreed with the NAD on these issues in a November 2021 decision.  Dkt. No. 32 ¶ 5; Dkt. No. 32-2 (NARB decision).  In particular, the NARB panel agreed that:

> One of the messages reasonably communicated by the "clinically proven – lose weight & keep it off" claim on the package is that individual SlimFast food products have been clinically proven to result in weight loss.  [Defendant], however, acknowledges that individual products have not been clinically evaluated.  Accordingly, unqualified clinically-proven claims for the products are unsubstantiated.

Dkt. No. 32-2 at 3.  The NARB panel therefore recommended "that unqualified clinically-proven claims, including 'Clinically Proven: Lose Weight and Keep It Off' be discontinued."  *Id*. at 5.[2]  The NARB decision included a statement by Defendant disagreeing with the NARB's opinion but stating that "SlimFast agrees to comply with the NARB's decision and more prominently connect the 'clinically proven' claim to the SlimFast Plan."  *Id*. at 5–6.[3]

---

[2] In another part of the decision, the NARB panel concluded that Defendant's claims were substantiated as to the SlimFast Plan (as opposed to the products), contrary to the NAD's finding on that issue.  Defendant makes much of the fact that "NARB *reversed* NAD's decision in part," Dkt. No. 34-1 at 9, but Plaintiff does not challenge the accuracy of Defendant's claims about the SlimFast Plan, so that portion of the decision has little if any relevance to this action.

[3] Neither party in this action has identified any changes to Defendant's advertising following the NARB decision or addressed the impact of any such changes on Plaintiff's request for prospective relief.

Based on Defendant's alleged misrepresentations about its products, Plaintiff alleges individual and class claims for violations of three California statutes: (1) the False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 *et seq.*, (2) the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*, and (3) the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code. § 1750 *et seq*. Dkt. No. 32 ¶¶ 58–83. Plaintiff initially alleged claims based on all SlimFast products marketed with the "clinically proven" statement. Dkt. Nos. 1, 17. On Defendant's motion to dismiss Plaintiff's First Amended Complaint, the Court held that Plaintiff lacked Article III standing to challenge advertisements on products she did not buy. Dkt. No. 31. The Court rejected Defendant's argument that Plaintiff's theory of the case was so implausible that amendment would be futile, allowed Plaintiff to file a narrower amended complaint, and deferred ruling on Defendant's remaining challenges to the pleadings. *Id*. at 4.

Plaintiff then filed her SAC, alleging claims based only on the four products she had purchased and seeking to represent a class of all people who bought those products in California. Dkt. No. 32. Defendant again moves to dismiss for failure to state a claim, arguing that (1) Plaintiff's claims fail because consumers cannot bring claims for lack of substantiation under California law, (2) reasonable consumers would not be deceived in the way Plaintiff alleges, (3) Plaintiff did not rely on the alleged misrepresentations, (4) Plaintiff failed to satisfy Rule 9(b), (5) Equitable relief is unavailable as a matter of law, and (6) Plaintiff has no cognizable basis for injunctive relief. Dkt. No. 34.

II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court next must

"determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

III.

The three statutes giving rise to Plaintiff's claims contain substantially overlapping prohibitions on the type of conduct alleged here. The FAL prohibits a defendant from knowingly disseminating untrue or misleading statements about the defendant's products to the public. Cal. Bus. & Prof. Code § 17500. The UCL prohibits "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* § 17200. The CLRA prohibits various unfair or deceptive practices, including "[r]epresenting that goods . . . have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have." Cal. Civ. Code § 1770(a)(5).[4] Notwithstanding the differences among the statutes, both parties treat Plaintiff's causes of action as interchangeable for purposes of Defendant's arguments (apart from the issue of equitable and legal remedies). Accordingly, the Court likewise assumes for purposes of this order that there are no material differences in the elements of Plaintiff's claims.

A.

Defendant first notes Plaintiff's reliance on the NARB's finding that Defendant's claims about its products are unsubstantiated[5] and argues that Plaintiff's claim is precluded because consumers may not bring claims for lack of substantiation under California law. The case law on which Defendant relies derives from *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, in which a private plaintiff argued that a defendant in a false advertising action should be required to bear the burden of proving its advertising claims. 107 Cal.

---

[4] The SAC alleges that "[i]n violation [of] the CLRA, SlimFast engaged in unfair and deceptive business practices by (a) advertising the weight loss aspect of SlimFast Products in a false and misleading way and (b) representing that SlimFast Products have benefits and qualities they do not have." Dkt. No. 32 ¶ 76. The pleading does not specify, and the parties do not address, which specific provisions of the CLRA Plaintiff alleges were violated. Plaintiff appears to allege at least a violation of § 1770(a)(5).

[5] Defendant incorrectly attributes this finding to NAD.

App. 4th 1336 (2003).  The plaintiff relied on Cal. Bus. & Prof. Code § 17508, which creates an administrative process whereby the Attorney General and other prosecuting authorities may require advertisers to substantiate certain advertising claims.  The California appellate court "reject[ed the plaintiff's] request to change current California law to shift the burden of production of evidence to defendants in false advertising actions," explaining that § 17508 "is expressly applicable only to prosecuting authorities.  Private plaintiffs are not authorized to demand substantiation for advertising claims." *Id*. at 1344–45.

In *Kwan v. SanMedica Int'l*, the Ninth Circuit relied on *King Bio* to affirm the dismissal of claims under the UCL and CLRA where the plaintiff challenged the scientific basis for the defendant's claims about a product.  854 F.3d 1088 (9th Cir. 2017).  The Ninth Circuit affirmed the district court's conclusion "that neither the UCL nor the CLRA provides [the plaintiff] with a private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws." *Id*. at 1096.  Because the plaintiff had made only conclusory allegations that the defendant's "clinically proven" claims were not supported by credible scientific proof, the Ninth Circuit found that each of her allegations was "simply an allegation that defendant's marketing claims lack scientific substantiation," and "[s]ince California law does not provide a private cause of action for claims that advertising lacks substantiation, the failure to allege specific facts pointing to actual falsehood constitutes a fatal flaw." *Id*. at 1096–97.

District courts in California have likewise dismissed claims that rely on a lack of substantiation theory.  *See, e.g.*, *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) ("Claims that rest on a lack of substantiation, instead of provable falsehood, are not cognizable under the California consumer protection laws. . . . [A] plaintiff's reliance on a lack of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to state a claim."); *Aloudi v. Intramedic Rsch. Grp., LLC*, No. 15-CV-00882-HSG, 2015 WL 4148381, at *4 (N.D. Cal. July 9, 2015) ("The Court finds that, as a matter of law, Plaintiffs cannot bring consumer protection claims solely on the basis of a lack of substantiation.").

Unlike the cases on which Defendant relies, Plaintiff neither challenges the validity of the clinical studies referenced on the SlimFast products' packaging nor suggests that Defendant's claims about the efficacy of its SlimFast Plan lack substantiation.  Instead, Plaintiff asserts that Defendant's claim that its *products* have been clinically proven to cause and maintain weight loss are false because the products have not undergone any clinical testing at all.  Defendant does not dispute

that such a statement about its products is false; it merely argues that its statement does not refer to its products.  Thus, Plaintiff's lawsuit, when properly construed, is not barred as an impermissible substantiation challenge.  *Kwan*, 854 F.3d at 1097; *see also Real v. Johnson & Johnson Consumer Companies, Inc.*, No. 2:15-CV-05025-SVW, 2016 WL 3220811, at *3–5 (C.D. Cal. Feb. 8, 2016) (rejecting motion to dismiss claims challenging statement that products were "clinically proven" to help babies sleep better where it was undisputed that the products themselves were not clinically proven and the statement referred instead to a nighttime routine described on the back of the packaging).

B.

Defendant next argues that no reasonable consumer would be deceived by its language into believing that Defendant's "clinically proven" claim referred to its products rather than the SlimFast Plan.  The "reasonable consumer" standard applicable to claims under the FAL, UCL, and CLRA is materially the same. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) (collecting cases).  This standard requires Plaintiff to "show that 'members of the public are likely to be deceived.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  A mere possibility that a few customers might conceivably misunderstand the statement is not enough; rather, "the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id*. (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).

In *Williams*, the plaintiff brought false advertising claims challenging the packaging of fruit snacks that used the words "Fruit Juice" on the front of the packaging alongside pictures of various fruits that were not contained in the product (which contained white grape juice from concentrate but had corn syrup and sugar as its first two ingredients).  The district court granted the defendant's motion to dismiss for failure to state a claim, finding among other things that "no reasonable consumer upon review of the package as a whole would conclude that [the product] contains the juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified." *Williams v. Gerber Prod. Co.*, 439 F. Supp. 2d 1112, 1116 (S.D. Cal. 2006).  The Ninth Circuit reversed.  552 F.3d 934.  It observed that "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer" and held that the facts did not "amount to the rare situation in which granting a motion to dismiss is appropriate."

8

*Id*. at 938–39.  In particular, the Ninth Circuit "disagree[d] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."  *Id*. at 939.

Here too, a reasonable consumer viewing the front of Defendant's SlimFast products might assume that the claim "CLINICALLY PROVEN [ – ] LOSE WEIGHT & KEEP IT OFF" refers to the product on which the claim is made rather than to a weight loss plan that is not mentioned on the front of the packaging and that does not in any way depend on consumption of the product being sold. Contrary to Defendant's suggestion, knowledge of the SlimFast Plan is not inherently incompatible with a belief that Defendant tested whether its products produced better results than other foods when used as part of the same low-calorie diet plan.  Indeed, the NAD decision incorporated into the pleadings suggests that Defendant *did* perform tests on specific products it previously sold, but that it has not done so for its current products.  Dkt. No. 32-1 at 5 ("The Advertiser's evidence was limited to studies and expert reports based on weight loss studies on discontinued SlimFast products.").  Finally, although the NAD and NARB's decisions are neither binding nor necessary to the Court's decision, the fact that both entities concluded that reasonable consumers could construe Defendant's packaging as claiming that the products themselves had been clinically proven to cause weight loss bolsters the plausibility of Plaintiff's claims.[6]

---

[6] The explanation in smaller print on the back of the product packages makes clear that Defendant's "clinically proven" claim refers to the SlimFast Plan, but it does not necessarily dispel the impression created by the front label that the product itself has been tested; consumers might assume that Defendant's tests of the SlimFast Plan involved the products being sold (as they apparently did for earlier products).  For example, the statement on the back of the packaging that "[f]or over 40 years, millions of Americans have lost weight and kept it off *using SlimFast Original Meal Shakes*, as part of the clinically proven SlimFast Plan," Dkt. No. 32 ¶ 40, arguably suggests that the advertised clinical testing of the SlimFast Plan included consumption of the SlimFast Original Meal Shakes. Regardless, under *Williams*, the Court does not assume at this stage that reasonable consumers would review the back of the product packaging to interpret the claim on the front.  Thus, the Court makes no determination whether the explanation on the back, either in isolation or in connection with the front label, could mislead a reasonable consumer.

Thus, particularly in light of the fact that reasonable consumers cannot necessarily be expected to look at the back of the packaging to understand the context of Defendant's claim, *Williams*, 552 F.3d at 939, this is not one of the rare cases where dismissal is warranted because the allegations of confusion are facially implausible.

### C.

Defendant next argues that Plaintiff's allegations that she relied on the product labels is implausible because she admits that she was aware of the SlimFast Plan before she brought the products. *E.g.*, Dkt. No. 32 ¶ 10. According to Defendant, Plaintiff's knowledge of the SlimFast Plan undermines her allegation that she believed that the products "in isolation" were clinically proven to cause and maintain weight loss. Dkt. No. 34-1 at 17. But Plaintiff makes no such claim about the products in isolation. The alleged misrepresentation is that the products themselves had been subjected to clinical testing and proven to cause weight loss. Familiarity with the SlimFast Plan is not necessarily incompatible with a belief that Defendant had clinically proven that its products led to more weight loss than other competing or alternative products when used as part of a low-calorie diet. Accordingly, Defendant has not shown that Plaintiff's allegation that she "purchased the products because she believed, based on SlimFast's statements, that the SlimFast products were clinically tested and proven to cause and maintain weight loss" is so implausible that her claims must be dismissed. Dkt. No. 32 ¶ 10.

### D.

Defendant also contends that Plaintiff's claims fail to satisfy Rule 9(b), which requires that a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). It is undisputed that Rule 9(b) applies to Plaintiff's claims, which allege that Defendant has misrepresented its products. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (explaining that Rule 9(b) applies to claims under California's consumer protection statutes when such claims are "grounded in fraud").

Defendant does not suggest that Plaintiff has failed to adequately identify the allegedly misleading statements. To the contrary, the SAC identifies the precise language that Plaintiff challenges and even includes images of the statement on the

label of each of the products Plaintiff purchased.  Defendant's only argument under Rule 9(b) is that Plaintiff has not alleged *how* the labels are misleading.  The Court disagrees.  The SAC contains numerous allegations explaining Plaintiff's theory that the labels falsely convey that the products have been tested and proven to assist in weight loss.  For example:

> [N]o clinical studies have been conducted regarding the effectiveness of SlimFast Products in "losing weight" or "keeping it off" independent of a low-calorie diet.  Thus, the message conveyed to consumers through SlimFast's Clinically Proven Claim diverges from the actual results of SlimFast's published studies.
>
> . . .
>
> [Plaintiff] purchased the products because she believed, based on SlimFast's statements, that the SlimFast products were clinically proven to cause and maintain weight loss.  Specifically, McCracken saw and relied on SlimFast's statements on the boxes that the products were "CLINICALLY PROVEN – LOSE WEIGHT AND KEEP IT OFF."  She saw the Clinically Proven Claim highlighted in bold, capitalized font on the front of the product packaging, and reasonably believed that SlimFast's product formula itself had been clinically tested and proven to cause and maintain weight loss.
>
> . . .
>
> [U]pon viewing the Clinically Proven Claim prominently displayed on the front of the package, the reasonable conclusion is that the claim applies to the product on which it appears, and not to some other weight-loss plan not included in the product's purchase.

Dkt. No. 32 ¶¶ 4, 10, 43.  These allegations provide adequate notice under Rule 9(b) as to how Plaintiff alleges Defendant's statement misleads her and other consumers.

### E.

Defendant's remaining arguments challenge the remedies Plaintiff seeks.  First, Defendant argues that equitable remedies are unavailable under the FAL,

UCL, and CLRA because an adequate legal remedy is available under the CLRA.[7] Less than three years ago, the Ninth Circuit considered this issue and held that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Applying these principles, the court explained that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Id.* (collecting cases).  The court held that the plaintiff had not made such a showing because the complaint did not allege that she lacked an adequate legal remedy and the plaintiff sought "the same sum in equitable restitution . . . as she requested in damages to compensate her for the same past harm." *Id.* ("[Plaintiff] fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion.").  The Ninth Circuit therefore affirmed the district court's Rule 12(b)(6) dismissal of the plaintiff's claims for equitable restitution under the UCL and CLRA.  *Id.*

In the SAC, Plaintiff seeks both compensatory damages and the equitable remedies of restitution and disgorgement.  Dkt. No. 32 at 22 (Prayer for Relief). Plaintiff alleges that she "sets forth alternate claims for damages under the CLRA and equitable relief (restitution and injunctive relief) under the FAL, UCL, and CLRA." *Id.* ¶ 47.  As to restitution, she alleges that she "does not know at this juncture whether Plaintiff's CLRA claim will survive through trial, whether the Court will accept a model for legal damages for past harm that Plaintiff will proffer at the appropriate time, or whether the Court will find that any such damages model adequately compensates Plaintiff and the Class for their past losses." *Id.*

---

[7] Defendant frames its argument broadly as a challenge to Plaintiff's request for "equitable relief," but it does not address Plaintiff's requested injunction in this section of its brief.  Instead, Defendant focuses on its argument that restitution is unavailable where damages provide adequate relief for past harm.  Defendant briefly mentions injunctive relief in the "adequate legal remedies" section of its reply brief, but only as part of an argument that Plaintiff cannot show future harm. Dkt. No. 39 at 13.  On this sparse record, it is not clear that any adequate legal remedy exists to compensate Plaintiff for *future* harm.  *See Adams v. Cole Haan, LLC*, No. 8:20-CV-00913-JWH, 2021 WL 4907248, at *4 (C.D. Cal. Mar. 1, 2021) (denying motion to dismiss claim for injunctive relief where "[m]onetary damages would not necessarily be sufficient to remedy" alleged future harm of being unable to rely on defendant's advertising).  The Court addresses the existence of such future harm in connection with Defendant's standing argument below.

¶ 50.  In her opposition, Plaintiff relies on *Adams v. Cole Haan, LLC*, No. 8:20-CV-00913-JWH, 2021 WL 4907248, at \*4 (C.D. Cal. Mar. 1, 2021), which noted "an 'intra-circuit split' on the issue of whether it is appropriate to dismiss UCL claims at the pleading stage when they are based on identical facts as other claims providing the legal remedy of damages" and declined to dismiss the plaintiff's equitable claims under the UCL, FAL, and CLRA.

*Adams* relied on four district court decisions that had reached a similar conclusion, all of which predated *Sonner*. *E.g.*, *Adams*, 2021 WL 4907248, at \*4 (C.D. Cal. Mar. 1, 2021) ("At least two recent cases in this district 'agree[] with the other district courts that have noted that barring claims for equitable relief at the pleading stage is inconsistent with the federal rules that permit pleading in the alternative.'" (quoting *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1061 (C.D. Cal. 2020), and citing *Byton N. Am. Co. v. Breitfeld*, No. CV 19-10563-DMG (JEMx), 2020 WL 3802700, at \*9 (C.D. Cal. Apr. 28, 2020)).[8]  Given the Ninth Circuit's published decision in *Sonner* holding that the plaintiff's claims for equitable remedies were properly dismissed under Rule 12(b)(6), the district court decisions suggesting that such dismissal is inconsistent with the federal rules are no longer persuasive.

Plaintiff's conclusory allegations about her uncertainty as to the damages that will be available do not "establish that she lacks an adequate remedy at law" for her alleged past injuries, as she must do before she can obtain equitable restitution or disgorgement. *Sonner*, 971 F.3d at 844.  Plaintiff's claims all are based on the same allegedly misleading advertising and allege the same harm.  She does not identify any possible—much less plausible—scenario in which she would prevail on her claims and be entitled to restitution or disgorgement but would not be entitled to damages.  And even if a restitution award were to differ from the damages she seeks, "an adequate legal remedy need not be an identical legal remedy.  It would be anomalous for [*Sonner's*] rule to be avoidable merely because of the reality that claims for restitution and damages often will result in different recoveries." *Ketayi v. Health Enrollment Grp.*, No. 20-CV-1198-GPC-KSC, 2021 WL 2864481, at \*10 (S.D. Cal. July 8, 2021).  Because Plaintiff has not established the unavailability of an adequate remedy at law (even in the alternative), her claims for equitable restitution must be dismissed. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) ("The issue is not

---

[8] *Byton* was decided on April 28, 2020; *Parrish* was decided on May 7, 2020; and *Sonner* was decided on June 17, 2020.

whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy.  On that point, *Sonner* holds that it does not.").

F.

Defendant's final argument challenges Plaintiff's standing to seek an injunction.  To establish Article III standing to bring a claim for injunctive relief, a plaintiff must demonstrate a threat of injury that is "actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  Defendant argues that Plaintiff's request for injunctive relief must be dismissed because her allegations of future harm are hypothetical and disingenuous.[9]

In *Davidson*, the Ninth Circuit resolved a split among lower courts and held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id*. at 969.  As the court explained,

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future.  In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.  In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising

---

[9] Defendant's argument that Plaintiff lacks Article III standing is a challenge to the Court's subject matter jurisdiction over Plaintiff's claim for injunctive relief.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III.").  Defendant's challenge is therefore properly raised under Rule 12(b)(1), not 12(b)(6).  Although the standards for such motions differ, the differences are immaterial to the Court's analysis here.

or labeling, as she may reasonably, but incorrectly, assume the product was improved. Either way, we share one district court's sentiment that we are "not persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false."

*Id*. at 969–70 (cleaned up). The plaintiff in *Davidson* challenged the defendant's marketing of certain wipes as "flushable," which she had determined was untrue. She claimed that she wished to buy the defendant's wipes in the future if they were truly flushable but that she could not rely on the packaging's statements and had no way of knowing whether the products had been altered to become flushable without buying them. The Ninth Circuit concluded that although it was "a close question," the plaintiff had adequately alleged that she faced an imminent or actual threat of future harm due to the defendant's false advertising. *Id*. at 970–71.

Plaintiff makes similar allegations in the SAC. She claims that in the future she "would pay a premium for SlimFast Products if they were, in fact, clinically proven to lose weight and keep it off," and alleges that injunctive relief is necessary because:

Plaintiff McCracken continues to have use for SlimFast Products. Yet, she does not and cannot know if SlimFast's advertising is accurate and truthful. If the Court were to enjoin SlimFast from making the misrepresentations described herein, Plaintiff McCracken would want to purchase SlimFast Products in the future. Without an injunction, Plaintiff McCracken cannot trust SlimFast's marketing claims and would not purchase SlimFast's Products.

Dkt. No. 32 ¶¶ 13, 51.

Defendant contends that these allegations are merely conjectural and that Plaintiff now knows the truth about its products and can simply review the entire label before making a future purchase. Defendant relies especially on *Matic v. United States Nutrition, Inc.*, in which the court distinguished *Davidson* and found no standing to pursue injunctive relief because the plaintiff had all the information he needed to determine the amount of protein powder in the defendant's products by looking at the label. No. 18-CV-9592-PSG, 2019 WL 3084335, at *7–8 (C.D. Cal. Mar. 27, 2019) ("While he complains that the size and location of the weight information make it difficult for unsuspecting consumers to find and read, it is clear that *he* knows precisely where to find it. Consequently, the Court does not

believe that he is likely to be deceived by the size of the protein powder containers in the future.").

Contrary to Defendant's assertion, the facts here do not "fall squarely within the holding in *Matic*."  Dkt. No. 34-1 at 23.  While Plaintiff now understands what Defendant *currently* intends to convey by its packaging, if Defendant continues to make identical representations in the future, Plaintiff (like the plaintiff in *Davidson*) will have no way of knowing whether Defendant has subsequently tested or improved the products.  And Defendant has not shown that Plaintiff's professed desire to purchase its products in the future if they are tested and proven to assist in weight loss (perhaps after modification) is disingenuous.  Under *Davidson*, it would be premature for the Court to conclude at this motion to dismiss stage that Plaintiff is not entitled to injunctive relief as a matter of law.

IV.

Because Plaintiff has not shown that adequate legal remedies are unavailable, Defendant's motion to dismiss is GRANTED IN PART, and Plaintiff's request for equitable restitution and disgorgement is DISMISSED for failure to state a claim.  Defendant's motion is otherwise DENIED.

Date: April 4, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge

16